[Cite as *In re B.C.*, 2015-Ohio-265.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| B.C., JR. | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | Case No. 14-CA-88 |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:   Appeal from the Court of Common
                   Pleas, Juvenile Division, Case No.
                   F2012-0600


JUDGMENT:            Affirmed


DATE OF JUDGMENT:       January 21, 2015


APPEARANCES:

For Appellant-Mother          For Appellee

MICHAEL R. DALSANTO        J. ANDREW STEVENS
3 South Park Place, Suite 220      20 South Second Street, 4th Floor
Newark, OH  43055         Newark, OH  43055

For Father             Guardian ad Litem

ADAM  O. JOHNSON         BONNIE VANGELOFF
3 South High Street          P.O. Box 4174
Canal Winchester, OH  43110      Dublin, OH  43016

*Farmer, J.*

{¶1}   On September 19, 2012, appellee, Licking County Department of Job and Family Services, removed B.C., Jr., born August 29, 2010, from his home.  Mother of the child is appellant, Katelyn Speakman; father is B.C., Sr.  On November 21, 2012, the child was found to be dependent and was placed in appellee's temporary custody. The child was placed with the maternal grandparents, Todd and Shelly Speakman.

{¶2}   On August 12, 2013, appellee filed a motion for permanent custody of the child due to the parents' failure to meet the objectives of the case plan.  A hearing before a magistrate was held on March 6, 2014.  By decision filed March 24, 2014, the magistrate recommended granting permanent custody of the child to appellee.  Both parents filed objections.  By judgment entry filed September 11, 2014, the trial court denied the objections and approved and adopted the magistrate's decision.

{¶3}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶4}   "THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

II

{¶5}   "THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF

PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

III

{¶6} "THE TRIAL COURT'S DECISION DENYING AN EXTENSION WAS AN ABUSE OF DISCRETION AND AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I, II

{¶7} Appellant claims the trial court's decision that the child cannot be placed with her within a reasonable amount of time and the child's best interest is best served with the granting of permanent custody to appellee was against the sufficiency and manifest weight of the evidence. We disagree.

{¶8} A trial court may grant an agency permanent custody of a child upon clear and convincing evidence of certain factors set forth in R.C. 2151.414. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus. See also, *In re Adoption of Holcomb,* 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶9} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and

determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52; *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21.

{¶10} R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the

agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(16) Any other factor the court considers relevant.

{¶11} R.C. 2151.414(D) sets out the factors relevant to determining the best interest of a child. Said section states relevant factors include, but are not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services

agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period* * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶12} At the time of the hearing, the child had been placed with the maternal grandparents and had been in appellee's temporary custody for over twelve months.

{¶13} The case plan for the parents included three issues: 1) substance abuse including assessment and random drug screens; 2) home conditions; and 3) mental health issues/domestic disturbances.

{¶14} In his decision filed March 24, 2014, the magistrate was very specific as to appellant's failure to follow the case plan:

4. Since that adjudication in October of 2013, Ms. Speakman and Mr. [C.] have not taken any of the requested drug tests, even after agreeing to take a test. Both testified that they are not taking any pain killers or other drugs now. The records from counseling show that the two have done very little in terms of counseling, with both Ms. Speakman and Mr. [C.] attending one session. At her session in January, 2014, Ms. Speakman acknowledged ongoing opiate use and also was inquiring of

the counselor how she could obtain anti-depressants. Mr. [C.]'s records indicate that he denied any problems or issues with substance abuse or anything else, and indicated that he was only in counseling so he could "get (his) kids back." Ms. Speakman testified that she did not want to engage in counseling, as she believed that anything she said in counseling would be "twisted" and used against her. Likewise, she testified that she would not take drug tests, as those results would be used against her as well.

8. A great deal of testimony was presented on visits and the relationship between Ms. Speakman and Mr. [C.] with the child. The testimony was uncontroverted that visits go well and the child is closely bonded to his parents. There were some issues brought up by the visitation coordinator, such as the name issue described above or some teasing of the child such as telling him the police were coming for him when a siren could be heard in the visit room.

{¶15} A review of the hearing transcript indicates despite having done a drug assessment at Mid Ohio, appellant failed to follow-through regarding drug treatment and failed to take drug screens at least twenty-one times. T. at 41-45. The home still lacked smoke detectors as required, but other conditions were resolved. T. at 46-47. Appellant failed to obtain counseling for mental health issues after a referral to Moundbuilders/Behavioral Healthcare Partners. T. at 47. There have been no domestic disturbances since September 2012. T. at 59.

{¶16} Appellant admitted to not following through on counseling and not taking drug screens since October 2013. T. at 9, 11-12, 74-76. She stated "I don't have a problem with talking to somebody, but you come here and these people twist it and use it against you and everything else." T. at 74. She admitted to not being totally honest in the counseling sessions. T. at 74-75. She refused to take drug tests "because I took one for them here at the court date for [another child] when they came and took her." T. at 75. She complied and they found drugs in her system "and they still came and took my daughter." T. at 76. Her opinion was "I'm damned if I do and I'm damned if I don't." *Id.*

{¶17} The undisputed facts substantiate the trial court's approval and adoption of the magistrate's decision finding that reunification with appellant was not possible after a reasonable amount of time pursuant to R.C. 2151.414(E)(1).

{¶18} As for best interest, appellant argues their visitations with the child established their interactions with the child have been positive and the child has bonded with them, and the guardian ad litem recommended legal placement of the child with the maternal grandparents. Appellant argues the trial court erred in not taking these factors into consideration.

{¶19} As explained by the trial court in its judgment entry filed September 11, 2014:

> 1. The magistrate was required to consider the guardian *ad litem's* recommendations. The magistrate was not required to follow the guardian *ad litem's* recommendations. The magistrate's analysis of the guardian *ad*

*litem's* recommendations were clearly and thoroughly set forth in his written decision. It is worthy to note that the guardian *ad litem* did <u>not</u> believe that this child should be returned to either of the natural parents.

{¶20} In his decision, the magistrate thoroughly discussed the issue of grandparent placement as follows:

7. The child is placed with his maternal grandparents. He has been in that placement since the removal. As far as the child is concerned, this placement has gone very well and [B.], Jr. is doing well in the placement. Mr. Speakman testified that he and his wife wish to pursue an adoption if that becomes an option. While [B.], Jr. has done well in the placement, there have been issues between the grandparents and the parents. Both Ms. Speakman and Mr. [C.] testified that they do not get along with the grandparents and they see the situation as being one where the grandparents are actually interfering in the case. An example was where Mr. [C.] was chastising [B.], Jr. for not using the name "[B.]," and instead calling himself "Leo." Apparently, this is the name used by the grandparents in the home and the parents do not approve of this. The concern they expressed is that if the grandparents obtain some type of custody through this case, Mr. [C.] will never see [B.], Jr. again because of the bad blood between the grandparents and him. When asked, Mr. Speakman testified that he did not wish to have legal custody but then

also testified that he would be open to such an idea if a third party would facilitate and supervise visits.

{¶21} The magistrate then concluded in pertinent part:

1. First, it must be noted that while there was a great deal of discussion about granting legal custody to a relative, there is no motion for legal custody before the court. No motion for legal custody has ever been filed in this case. Revised Code 2151.353(A)(3) states that a court may grant legal custody "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings." As no motion was ever filed, this option is not available in this case.

{¶22} As the magistrate acknowledged in his decision on page 8, the decision of placement rests with appellee once permanent custody is granted. Appellee's ongoing social worker assigned to the case, Matthew Tracy, opined the following (T. at 51-52):

I did talk with the grandparents at length multiple times about different options for permanency between legal custody and permanent custody and kind of what that entails.

With talking with them and kind of talking with my supervisor and kind of staffing this case, came to the conclusion that permanent custody is the best option for BJ at this time. I don't feel that the parents are in any position now or in the near future to be able to take care of [B.], or BJ. I also think that there's definitely some really hard feelings between the parents and the grandparents where I don't think there could be supervised visitations during those type of things.

\*\*\*

Once again, I - - I feel it's in the best interest of - - of BJ to be placed in the permanent custody of the Agency so that we can do an adoption. At this point Mrs. and Mr. Speakman have indicated that they would adopt BJ if the Agency were to be granted permanent custody.

{¶23} Upon review, we find sufficient clear and convincing evidence to support the trial court's decision on best interest and the granting of permanent custody of the child to appellee.

{¶24} Assignments of Error I and II are denied.

III

{¶25} Appellant claims the trial court abused its discretion in not granting an extension of the temporary custody order and deferring ruling on the motion for permanent custody. We disagree.

{¶26} Pursuant to R.C. 2151.415(D)(1), if an agency requests an extension of temporary custody for a period of up to six months, a trial court may grant an extension

"if it determines at the hearing, by clear and convincing evidence, that the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension."  In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983).

{¶27} At the conclusion of the permanent custody hearing during closing statements, appellant's counsel requested an extension (T. at 97-98):

I believe that the evidence did not show that Mom is abusing prescription drugs.  The home is clean and appropriate.  The allegations that were in the complaint have been remedied, or the issues that were in the complaint have been remedied, and there have been no domestic violence issues or reports.  And so we are asking - - we are asking the Court to grant an extension.

We do believe that the only reason that a legal custody motion attached to the statement of understanding - - and a statement of understanding were not presented to the Court or filed with the Court is because it was not in maternal grandparents' best interest, not because it was not in [B.], Junior's, best interest.

We don't believe that the grandparents are willing to work with Dad. We believe that the grandparents are willing to work with Mom, but we

don't believe that - - we don't believe that they're willing to work with Dad, and that is why they did not agree to legal custody at this time. That does not mean that it was not in [B.], Junior's, best interest.

So since [B.], Junior, is the reason why we're here today, and since the statute refers to his best interest and not the caregivers', then we are asking that an extension of temporary custody be granted so that maybe we can all work together even further to see if we can remedy the situation short of permanent custody of [B.], Junior, to the State - - to the - - and therefore the Agency, Your Honor.

{¶28} After an examination of the testimony, we concur with the magistrate's assessment of this request in his decision on page 9:

Finally, with respect to granting an extension to pursue a legal custody option, the undersigned can really see no basis for an extension. The statute requires that, to grant an extension, a court must find "by clear and convincing evidence, that the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is a reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension." R.C. 2151.415(D)(1). Factually, the evidence presented showed minimal progress in terms of the case plan. Minimal substance abuse counseling has occurred. Minimal mental health counseling has

occurred.  All the two have managed to do is clean their house enough so that when someone comes to check, it meets minimal standards.  Even more that this, we have two people who have for the last several months refused to comply with the case plan as ordered by this court and take drug tests.  This isn't just a lack of progress, but a choice to not do what is being asked, which gives little hope for great improvement during an extension period.  Also, there is no real cause to believe that granting an extension at this point will result in reunification or permanency of some type.  The whole reason that an extension was suggested was to allow counsel to look for the possibility of another option in place of the one that is actually available now.

{¶29}  Upon review, we find the trial court did not abuse its discretion in not granting an extension of the temporary custody order.

{¶30}  Assignment of Error III is denied.

{¶31} The judgment of the Court of Common Pleas of Licking County, Ohio, Juvenile Division is hereby affirmed.

By Farmer, P.J.

Delaney, J. and

Baldwin, J. concur.

SGF/sg 1222